PILLSBURY WINTHROP SHAW PITTMAN LLP
CHRISTOPHER KAO (237716)
christopher.kao@pillsburylaw.com
BROCK S. WEBER (261383)
brock.weber@pillsburylaw.com
SURUI QU (332105)
surui.qu@pillsburylaw.com
JU YOUNG PARK (359102)
ju.park@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, California 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200

Attorneys for Plaintiffs Curiox Biosystems Co., Ltd. and Curiox Biosystems, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CURIOX BIOSYSTEMS CO., LTD., and CURIOX BIOSYSTEMS, INC.,

Plaintiffs,

v.

BECTON, DICKINSON AND COMPANY and WATERS CORPORATION,

Defendants.

Case No. 3:26-cv-13592

**COMPLAINT AND DEMAND FOR JURY TRIAL FOR:**

(1) Trade Secret Misappropriation Under The Defend Trade Secrets Act;
(2) Trade Secret Misappropriation Under The California Uniform Trade Secrets Act;
(3) Breach of Confidential Disclosure Agreement;
(4) Intentional Interference with Prospective Economic Advantage; and
(5) Unfair Competition and Unfair Business Practices Under California Business and Professions Code §§ 17200 et seq.

**REDACTED PUBLIC VERSION**

Plaintiffs Curiox Biosystems Co., Ltd. and Curiox Biosystems, Inc. (collectively, "Curiox") allege the following on personal knowledge as to their own acts and records and on information and belief as to other matters, following reasonable inquiry.

## NATURE OF THE ACTION

1. Curiox is the industry leader in, and recognized inventor of, groundbreaking technology for centrifuge-free cell preparation for flow cytometry, a technique used in the scientific research of cells. Curiox has marketed and sold this technology as part of its C-FREE™ Pluto™ suite of products (the "Pluto technology") since July 2024.

2. Curiox brings this action to protect the highly valuable trade secrets underlying its revolutionary Pluto technology from willful misappropriation by Becton, Dickinson and Company ("BD") and the Waters Corporation ("Waters"), which misused Curiox's trust and technical know-how to develop a copycat platform that Waters is calling the "BD FACS360 Sample Preparation System" (the "FACS360 System"). Waters has been demonstrating the FACS360 System publicly in November 2026 and, on information and belief, plans to begin selling it as early as December 2026.

3. Curiox spent years developing the Pluto technology at issue. Curiox's innovations dramatically increase the efficiency of flow cytometry, while simultaneously improving the results. For instance, Curiox's Pluto technology removes the time consuming and expensive centrifuging process that has been the industry standard for the past 50-plus years; saves hands-on time by combining cocktailing, staining, and washing in one platform; enhances reproducibility by removing manual transfers and pipetting variability; is compatible with common labware; and requires minimal assay optimization. Curiox's Pluto software further adds centrifuge-free processing capabilities to existing liquid handlers without requiring new hardware.

4. Under the guise of seeking a business relationship with Curiox, BD's "BD Biosciences" division sought insider access to Curiox's game-changing technology in 2025. Subject to a Confidential Disclosure Agreement ("CDA") between the parties, Curiox entrusted a working Pluto workstation with a variety of prototype features under development to BD in or around July 2025 for a limited business evaluation, believing BD's interest to be genuine.

5. At that time, Curiox sent an application engineer and a Pluto workstation to BD's California facility located at 155 N. McCarthy Blvd., Milpitas, California. The engineer demonstrated the workstation including its prototype features to BD for approximately one week and provided confidential details regarding the design and operations of the product to BD engineers and scientists,

including demonstrating the use of Curiox's proprietary software to control the product. At BD's request, Curiox allowed BD to retain the prototype for approximately another three weeks without Curiox's engineer present. Following this evaluation period, Curiox continued to provide confidential information to BD in August and September 2025 regarding its Pluto technology, including but not limited to prototypes of its Workflow Wizard software and documentation showing how Curiox developed automated scripts for the workstation based on simple user inputs.

6. Instead of moving forward with any commercial relationship with Curiox, however, BD and later Waters—which acquired the entire BD Biosciences division in February 2026 and has rebranded it as "Waters Biosciences"—used Curiox's proprietary and confidential technology to launch and accelerate development of its own competing FACS360 System.

7. Neither BD nor Waters sought or obtained Curiox's permission to use its proprietary and confidential Pluto technology in this way.

8. The protected information disclosed to BD encompass at least five specific subject areas that Curiox invested substantial time and resources in developing: (1) optimized settings, including pipette tip heights for each well volume and cell culture plate type, to perform sample preparation in a centrifuge-free workstation using specific pipettes, cell culture plates and reagent types; (2) automatic conversion of user protocols for sample preparation workflows using a centrifuge to a workflow in a centrifuge-free workstation; (3) a liquid class library with optimized aspirate and dispense procedures by liquid class; (4) parameter combinations implementing optimized multiple cell-washing modes and multiple cell-and-reagent mixing modes; and (5) optimized settings for pipetting transfer actions outside cell-washing modes and cell-and-reagent mixing modes.

9. These operating selections are implemented through the use of Curiox's proprietary Pluto systems—the "Pluto ALPHA" and the "Pluto Workstations"—and the "Pluto Code" software. Their value lies in the particular non-public settings and combinations that make the process work optimally and reproducibly, not in the general idea of using pipettes, cell culture plates, or automating laboratory work using a centrifuge-free workstation.

10. Curiox seeks relief under the Defend Trade Secrets Act ("DTSA"), California's Uniform Trade Secrets Act ("CUTSA"), the CDA, California law governing intentional interference

with prospective economic advantage, and California's Unfair Competition Law, Business and Professions Code §§ 17200 et seq. Curiox seeks damages and relief preventing further use or disclosure of its protected information, including any demonstration or commercialization of the FACS360 System to the extent it embodies or uses that information.

**PARTIES**

11. Plaintiff Curiox Biosystems Co., Ltd., is a Korean corporation, with its principal place of business at Samsung Harrington IT Tower #202, 9 Gil 41 Digital-Ro Geumchun-Gu, Seoul, Korea. It is publicly-traded on KOSDAQ under stock code 445680.

12. Plaintiff Curiox Biosystems, Inc., is a California corporation, with its principal place of business at 400 W. Cummings Park, Suite 6650, Woburn, Massachusetts. Curiox Biosystems, Inc., is a wholly-owned subsidiary of Curiox Biosystems Co., Ltd.

13. Together Curiox Biosystems Co., Ltd., and Curiox Biosystems, Inc. are referred to herein as "Curiox."

14. Curiox owns the trade secrets asserted here within the meaning of 18 U.S.C. § 1839(4) and possesses the rights to enforce the CDA.

15. Defendant Becton, Dickinson and Company ("BD") is a New Jersey corporation with its principal executive offices at 1 Becton Drive, Franklin Lakes, New Jersey. BD entered into the CDA in its own name and on behalf of its worldwide affiliates. At the relevant time, BD's "BD Biosciences" division conducted operations in California, including in San Jose and Milpitas, California, both in this District.

16. Defendant Waters Corporation ("Waters") is a Delaware corporation with its principal offices at 34 Maple Street, Milford, Massachusetts. Waters acquired the BD Biosciences division from BD on or about February 9, 2026, and renamed it "Waters Biosciences." The Waters Biosciences division of Waters continues to conduct operations in California, including in San Jose and Milpitas, California, both in this District.

17. On information and belief, BD Biosciences started the development of the accused FACS360 System after Curiox disclosed its proprietary and confidential information regarding its centrifuge-free Pluto technology in or about July 2025. Waters continued that development after its

acquisition of BD Biosciences and continues to employ the former BD Biosciences employees who had access to and used Curiox's protected information.

**JURISDICTION AND VENUE**

18. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because Count I arises under the DTSA. The Court has supplemental jurisdiction over Counts II through V under 28 U.S.C. § 1367(a), because they arise from the same confidential evaluation, alleged misuse, and resulting commercial dispute.

19. The asserted trade secrets relate to products and services used or intended for use in interstate and foreign commerce, including Pluto instruments, software, and cell-preparation workflows developed and commercialized across Korea, the United States, and other markets. The challenged conduct occurred in 2025 and 2026, after the DTSA's enactment.

20. This Court has specific personal jurisdiction over BD because BD purposefully arranged for the confidential Pluto workstation demonstration and evaluation at its facility in Milpitas, California, within this District, and received the Pluto workstation and other protected information there. The claims against BD arise out of or relate to that California evaluation of Curiox's technology and BD's alleged misuse of what it received.

21. This Court has specific personal jurisdiction over Waters because it purposefully participated in the challenged acquisition, development, and use of Curiox's protected technology in this District to develop its competing FACS360 System. The claims against Waters arise out of or relate to those contacts.

22. Furthermore, Waters has acquired, is maintaining, and is doing business from the former BD Biosciences offices in Milpitas and San Jose, California, which also supports general personal jurisdiction over Waters in this District.

23. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District, including Defendants' evaluation and alleged misuse of Curiox's protected information relating to its Pluto technology.

24. Under Civil Local Rules 3-2(c) and 3-5(b), assignment to the San Jose Division is appropriate because a substantial part of the events giving rise to this action occurred in Santa Clara County.

## FACTUAL ALLEGATIONS

### A. Curiox Built Its Business By Solving A Persistent Cell Preparation Problem.

25. Curiox is a life science technology company founded by Dr. Namyong Kim in 2008. Dr. Kim earned a chemistry degree from KAIST (formerly, the Korea Advanced Institute of Science and Technology) and a Ph.D. in chemistry from the Massachusetts Institute of Technology.

26. Curiox pioneered technologies to eliminate the use of a centrifuge in automated cell analysis for scientific laboratory testing, something that was previously believed in the industry to be impossible.

27. Before a cell sample (a blood cell, for example) can be analyzed, researchers commonly must combine cells with reagents, allow staining or other reactions to occur, and remove unbound reagents while preserving the cells for analysis. For the last 50-plus years, the conventional and <u>only</u> way to do this was to use repeated centrifugation and manual pipetting of the cells and reagents. For example, analysis of cultured blood cells conventionally requires extensive multi-step washing to remove interfering substances found in the culturing medium and/or other fluids in which the cells are grown, stored, or processed. Separation of fluids from cells at each washing step is commonly facilitated by a centrifuge, which compacts cells into a pellet and thereby allows fluid removal.[1]




[1] https://pipette.com/blog/how-does-a-centrifuge-work.

28. Those transfers and spins interrupt automation, consume researcher time, and can introduce cell loss or inconsistent handling. The preparation step can affect the quality and comparability of the eventual analytical results.

29. In addition, centrifuges are manually operated and bulky devices that typically require the cell samples to be transferred to compatible containers and therefore cannot easily be integrated into an automated system for a seamless workflow. Centrifuges also generate extreme g-forces to separate materials of different densities and can damage or exert stress on the cell samples. Despite these drawbacks, elimination of centrifuges in automated cell analysis workflows had not been successfully achieved by others in the industry. As such, almost all leading manufacturers still rely on centrifugation, operated manually.

30. Curiox's ground-breaking innovative solutions eliminated the need for centrifugation with its proprietary liquid aspirating and dispensing procedures. First commercialized as Laminar Wash™ technology in 2017, Curiox's innovation to circumvent centrifugation relies on a pair of micro-pipettes that sequentially aspirate and dispense fluid without disturbing cells that have settled down by gravity. This centrifuge-free approach not only allows automated cell washing but also achieves several other benefits including preservation of cell integrity by gentle handling, reduction of processing time, scalability to handle as few or many samples as required, and improved data quality by eliminating human error.[2]




31. Curiox achieved this groundbreaking technology through years of research and development efforts. Dr. Kim, the founder and CEO of Curiox, conceived of the core principles

[2] https://www.curiox.com/technology/curiox-laminar-wash/.

underlying the Laminar Wash technology in 2013 and validated their usefulness through at least four years of additional research efforts. Products incorporating Laminar Wash were introduced to the U.S. and international markets in 2017.

32. Curiox continued to advance its centrifuge-free (C-FREE) cell washing technology and introduced more versatile and scalable technology implemented in the Pluto product portfolio. The Pluto technology is based on the same core principles that enabled the elimination of centrifugation in Laminar Wash but has been further optimized to enhance scalability and compatibility with conventional cell culture platforms and equipment.[3] It took at least seven more years of development after Curiox first started selling its Laminar Wash products to optimize the technology and arrive at a commercially viable prototype for this Pluto technology.

33. The Pluto technology is now offered as part of complete hardware systems, such as the Pluto ALPHA and the Pluto Workstations,[4] or as software that can be integrated into existing cell-processing stations, the Pluto Code.[5] Unlike Curiox's Laminar Wash systems, Pluto systems use a single pipette per cell sample and can leverage conventional disposable pipette tips and cell culture plates. This compatibility with off-the-shelf components allows Pluto technology to be easily implemented in various hardware setups, including those that were not previously intended to work with the technology.

34. The Pluto technology's versatility reflects the culmination of more than a decade of research and development by Curiox. Dr. Kim and his colleagues at Curiox repeatedly refined key operating parameters to achieve wash performance comparable to or exceeding that attained by Laminar Wash, while relying exclusively on commercially available disposable components. The results from this research and development are embodied in Curiox's proprietary software that defines the precise operating conditions that create gentle and yet efficient laminar-flow-based handling to wash cells without reliance on centrifugation.

---

[3] https://www.curiox.com/technology/curiox-c-free/.

[4] https://www.curiox.com/product/pluto-alpha/); https://www.curiox.com/product/pluto-workstation/.

[5] https://www.curiox.com/product/pluto-code/.

**B. The Pluto Platform Includes Instruments And Proprietary Software.**

35. Pluto ALPHA is Curiox's compact, pipette-based cell-washing instrument. It provides automated washing without a centrifuge and uses preconfigured, optimized protocols. Figure 1 below depicts the Pluto ALPHA.



**Figure 1**. Pluto ALPHA.[6]

36. The Pluto Workstation brings antibody cocktail preparation, cell staining, and centrifuge-free washing into an automated workflow. Its guided software, called the "Workflow Wizard," helps users configure and execute sample-preparation protocols. Figure 2 depicts an exemplary Pluto Workstation.



**Figure 2**. Pluto Workstation.[7]

[6] https://www.curiox.com/product/pluto-alpha/.

[7] https://www.curiox.com/product/pluto-workstation/.

37. Pluto's proprietary software controls the various operating parameters at issue in this case. Curiox also markets Pluto Code separately for implementing its centrifuge-free approach on compatible liquid-handling platforms. Figure 3 depicts the Pluto Code product.




**Figure 3**. Pluto Code software.[8]

38. The instruments and software give Curiox several routes to market, including sales of its own systems and arrangements allowing other equipment manufacturers to offer or license its technology. An arrangement in which BD would sell devices under the BD brand, for example, or acquire Curiox, could have provided Curiox an additional commercial opportunity. Those were subjects of the confidential exploration between the parties discussed below.

**C. Industry Praise For Curiox Technology.**

39. Curiox's C-FREE technology—both its Laminar Wash and Pluto product lines—have received consistent praise in the industry from customers and evaluators as a breakthrough technology.

[8] https://www.curiox.com/products/.

For instance, Dr. Holden Maecker, the Director at the Human Immune Monitoring Center at Stanford University has explained that:

> Standardizing high-parameter flow cytometry workflows has been a persistent challenge in research immune monitoring. The Workflow Wizard addresses this directly: our team can load an existing staining and washing protocol as a table, and the Pluto Workstation executes every step without manual intervention. That combination of immediate usability and run-to-run reproducibility is what makes it a serious tool for high-throughput immune monitoring environments.[9]

40. Dr. Raffaello Cimbro at AstraZeneca has similarly stated that "Pluto can allow you to basically simulate centrifuge-free cell washing using a standard liquid handler. It's really a nice technology."[10]

41. Dr. Ajit Kamath of Beam Therapeutics has expressed that Curiox's C-FREE technology "significantly reduces the hands-on time that leads to faster assay time while performing to same equivalence with our pre-made antibody panel."[11]

42. Dr. Christoph Eberle of Charles River Laboratories has exclaimed that Curiox's solution "gives you a new tool where you are removing more of what you don't want and keeping more of what you do want in your sample. It's not magic, but it makes a difference. A difference you can clearly see in your staining results." He has also stated that Curiox's technology "means less mechanical stress on cells and less cell loss from a sample when compared to conventional centrifugation steps."[12]

43. Dr. Rebekah Gundry, of the College of Medicine at the University of Nebraska Medical Center, stated that "after a few quick tests, it was pretty clear pretty quickly that [Curiox's technology] was going to be a game changer for us."[13]

---

[9] https://www.curiox.com/resources/customer-testimonials/.

[10] https://www.curiox.com/resources/customer-testimonials/.

[11] https://www.curiox.com/resources/customer-testimonials/.

[12] https://www.curiox.com/resources/customer-testimonials/.

[13] https://www.curiox.com/webinars/getting-to-the-heart-of-the-matter-novel-analytical-technologies-provide-a-new-perspective-on-a-complex-organ/

44. Similarly, Asia Business recognized Curiox as a "Game Changer" that "succeeded in developing and commercializing the world's first automated cell analysis process equipment."[14]

45. Dr. Ming Lu of UCLA, in an independent product review, wrote: "It is a game changer. Cells are washed without centrifuges. No more clogging the flow instruments."[15]

**D. At Least Five Trade Secrets Underlie The C-FREE Pluto Platform.**

46. Curiox's trade secrets include at least the following five sets of non-public operating information, as demonstrated and entrusted to BD. Public descriptions of centrifuge-free washing and mixing, ordinary pipetting principles, and the public names of intensity settings are excluded from the asserted secrets. The claims concern Curiox's particular, undisclosed selections and parameter combinations and optimizations.

47. Trade Secret 1 – Optimized Operating Parameters for a Centrifuge-Free Workstation. Curiox invested years of research and development in determining the preferred combination of settings (for pipette tip heights during aspiration and dispensing, reagent dispensing flow rates, procedures and speed of pipette tip insertion and withdrawal from the solution, among others) in a centrifuge-free workstation using specific types of pipettes, cell culture plates and reagents in order to optimize the performance of the workstation. These settings include the pipette tip height Curiox selected for each well volume in a specific type of cell culture plate and its well profile, the relationship Curiox uses to set the tip height from the volume of liquid in a well, and the speed at which the tip follows the liquid surface. The trade secret is the actual settings and their combination. These parameters were implemented in the demonstration Pluto Workstation provided to BD during its evaluation period.

48. Trade Secret 2 – Automatic Conversion of User Protocols. Curiox developed proprietary methods to automatically convert user protocols that had been developed for sample preparation workflows using a centrifuge into workflows that could be used for sample preparation in a centrifuge-free workstation. These processes for automatic conversion were implemented in

[14] https://view.asiae.co.kr/en/article/2024103009431637524.

[15] https://www.selectscience.net/product/laminar-wash-ht2000-system.

Curiox's "Workflow Wizard" software, the prototype of which was provided to BD during its evaluation period.

49. Trade Secret 3 – Liquid Class Library. Curiox developed its own liquid class library containing 54 liquid class definitions for its sample preparation workflows and a separate set of liquid class definitions for transferring antibody solutions during antibody cocktail preparation. The definitions are organized by Pluto workstation model and pipette tip size. Each definition specifies a combination of settings that Curiox optimized for the liquid, pipette tip, and operation concerned, including the aspiration and dispensing speeds, the speeds at which the pipette tip enters and leaves the liquid, the air-gap and blow-out volumes, the settling times after aspiration and dispensing, the excess and pre-dispense volumes, and the liquid-level-detection settings. The trade secret is the actual definitions, the values they contain, and their matching to particular pipette tips and transfer volumes, not the general concept of a liquid class. This library and parameters were implemented in the demonstration Pluto Workstation, its scripts, and the prototype software provided to BD during its evaluation period.

50. Trade Secret 4 – Optimized Cell-Washing and Mixing Modes. Curiox developed specific, non-public operating characteristics and combinations of settings that implement the Light, Moderate, and Heavy cell-washing and cell-and-reagent mixing modes in the Pluto system. Those modes implement different washing intensities to separate cells from unwanted reagents, and mixing intensities, which combine cells with reagents, as distinct from washing unwanted reagents away. The trade secret comprises the actual underlying parameter combinations, including the applicable height, dispensing-rate, and motion-speed selections and their coordinated use within each identified mode, which were implemented in the prototype software provided to BD during its evaluation period. The publicly disclosed mode names themselves are not claimed as secret.

51. Trade Secret 5 – Optimized Pipetting Transfer Actions. Curiox developed particular, non-public operating characteristics that implement the pipetting transfer actions the Pluto system performs outside its cell-washing and cell-and-reagent mixing modes, namely transferring samples into the plate, adding reagents and buffers, transferring and mixing antibody solutions from their source vials or tubes to prepare antibody cocktails, topping up the well volume before acquisition, and

transferring the prepared samples to the labware used for acquisition. The trade secret comprises the actual underlying parameter combinations for each transfer action, including the pipette tip heights for aspiration and dispensing, the selection of pipette tip and liquid class according to the transfer volume, the speed and offset at which the pipette tip follows the liquid surface, the dead volume reserved for each type of source vial or tube, and the cycle-count, flow-rate, volume, and height selections for the mixing performed within the action, and their coordinated use, including the particular selections for the operations demonstrated to BD. The general proposition that liquids can be transferred by pipette, or that pipette height can affect a sample, is not claimed as secret.

52. Each identified set of information has independent value because it embodies an optimized solution that a competitor otherwise must develop and test. The identified washing and mixing combinations have value as coordinated protocols even if an individual component, such as using a pipette, is generally known.

53. At the relevant times, the claimed operating information was not generally known to others who could obtain economic value from its disclosure or use and was not readily ascertainable through proper means. Public descriptions of the products and their benefits did not disclose the protected information. Curiox kept the particular selections and protocol combinations identified above confidential while publicizing the capabilities of the resulting products.

54. Curiox took reasonable measures to preserve secrecy. It retained the proprietary source code, required written confidentiality agreements before disclosure of any of this information to third parties, including before BD's evaluation of the Pluto technology, confined BD's authorized use to the specified evaluation purpose, and obtained express restrictions on copying, modification, de-compilation, reverse engineering, and derivative works. The prototype disclosed to BD was temporarily entrusted only for evaluation purposes and was later returned.

55. To protect the results of its years of research, Curiox has also implemented strict security measures to protect its centrifuge-free technology. For example, Curiox stores all information relating to the operating parameters of Laminar Wash and C-FREE Pluto—including any experimental designs and results, software codes, and communication within Curiox—in a high-security storage

device that has restricted access to only a small number of selected personnel. Any hard copies of such information are stored in a restricted area, access to which is monitored and requires permission.

56. Moreover, Curiox has written policies ensuring security of its technology. For example, every Curiox employee is required to sign a confidentiality agreement that prohibits disclosure or transfer of Curiox's proprietary and confidential information during and after employment. Internally, operating-parameter specifications are held in private, invitation-only Teams channels within the R&D team, with membership changes subject to department-head approval; company systems require multi-factor authentication; and physical access at each site is controlled by electronic entry systems that record each employee's entry, with development-zone access at headquarters limited to management and R&D staff.

57. Curiox has also implemented other security measures. Every user of Curiox's Pluto software must accept an on-screen End User License Agreement before the software will run, which prohibits any attempt to "reverse engineer, decompile, disassemble" the software or to "replicate, analyze, or implement Curiox's proprietary wash and mixing methods … on any non-Curiox platform," and each installation is bound to a device-specific license key issued by Curiox. And Curiox discloses its technology to third parties only under written confidentiality agreements.

58. The nonpublic operating information derives economic value from secrecy because it enables reliable automated protocols and can save a competitor development time, experimentation, and expense. Unauthorized access can supply a development shortcut even if a competitor writes different source code. Disclosure or competitive use also impairs Curiox's ability to sell or negotiate over technology whose practical implementation reflects Curiox's investment.

**E. BD Expressly Accepted Restrictions On Evaluation And Competitive Use.**

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

**F. Curiox Demonstrated A Pluto Workstation To BD In California.**

70. BD expressed interest in learning more about Curiox's Pluto technology in or about January 2025. At the time, BD expressed skepticism that Curiox's centrifuge-free technology would be a viable alternative to the existing centrifuge processes and sought more detailed information from Curiox about the specifics of how Curiox performed its sample preparation.

71. At BD's request, Curiox ultimately arranged for a private demonstration of its Pluto technology for BD at BD's facility in Milpitas, California in July 2025.

72. On or around July 7, 2025, Curiox sent an application engineer to BD's facility in Milpitas for approximately one week. During that time, the engineer demonstrated a working Pluto workstation with both existing and prototype software features still in development for BD personnel evaluating a potential business arrangement. The participants from BD included at various times at least Dr. Eric Diebold, Mr. Alex Vallerand, Ms. Jennifer Lazar, Dr. Ali Rezvan, Dr. Moen Sen, and

Mr. Tri Le, and the demonstration involved operating information regarding the Pluto Workstation and software procedures and protocols.

73. Curiox did not provide BD its Pluto source code. The confidential access consisted of the functioning Pluto workstation, training and information regarding the operation of the workstation and both the existing and prototype software that Curiox was developing for the workstation, and associated information supplied to BD during evaluation. The Pluto technology described and demonstrated to BD included all five categories of protected trade secrets described above.

74. At the end of the Curiox engineer's on-site visit, BD was allowed to retain the Pluto workstation for approximately another three weeks. Curiox permitted this use for the limited evaluation governed by the CDA. That additional access did not grant BD any right to reverse engineer the Pluto Workstation or its software, or to use Curiox's protected information to develop a competing product.

75. Subsequent to the on-site evaluation, Curiox continued to provide proprietary and confidential information to BD at BD's request, including but not limited to documents and prototype software—for Curiox's Workflow Wizard, for example—describing in detail how Curiox's Pluto system functions and was optimized for customer use.

76. Curiox permitted an evaluation, not commercial exploitation of its proprietary and confidential information. It did not grant BD or Waters a license to use the asserted operating know-how in their later-developed FACS360 system.

**G. The Acquired Biosciences Business Announced A Competing Sample Preparation System.**

77. On February 9, 2026, Waters publicly announced completion of the acquisition of BD's "BD Biosciences" business. BD and Waters remained separate publicly traded companies after the transaction. Waters' public summary also states that some products could continue to bear BD branding during regulatory transfers.

78. On information and belief, personnel—including but not limited to Dr. Rezvan, Dr. Sen and Mr. Le—and technical materials associated with the Curiox evaluation moved into or became available to Waters after it acquired BD Biosciences, and Waters continued the development activity

that BD Biosciences improperly engaged in utilizing Curiox's proprietary and confidential information.

79. In or about October 2026, Waters announced that it had developed and would soon begin selling its own centrifuge-free sample preparation system, called the FACS360 System. The FACS360 System is remarkably similar in form and function to Curiox's Pluto workstation that BD had access to and evaluated on a confidential basis in the summer and fall of 2025.




**Figure 4**. FACS360 System.[16]

80. The accused FACS360 system's publicly-disclosed marketing materials describe a combination of centrifuge-free cell washing, antibody cocktailing, staining, and guided protocol execution. The advertised functions overlap with and appear to copy important functions of Curiox's Pluto technology.

81. Available technical specifications identify the FACS360 as a modular, enclosed, benchtop automated liquid-handling system with a 96-channel pipette head supporting volumes from 1 to 200 microliters. Product material states that the system processes up to 96 samples per run and uses the 96-channel head to reduce well-to-well variability. The materials also identify extracellular and intracellular staining, fixation and permeabilization, and pipette-tip tracking among its capabilities. The BD FACS360 Experiment Planner—exactly like Curiox's Workflow Wizard—

[16] https://www.bdbiosciences.com/en-us/learn/campaigns/facs360-sample-prep-system.

provides guided protocol setup without programming expertise, and the system automates repetitive pipetting steps and protocol setup.

82. On information and belief, BD and Waters used Curiox's specific, non-public implementation of the Pluto technology demonstrated to BD in July 2025 to achieve the FACS360 System's corresponding capabilities. The disclosed features of the FACS360 System closely correspond to the integrated workflow Curiox demonstrated to BD in July 2025 with its Pluto workstation: software-directed pipetting that performs antibody cocktailing, cell staining, and cell washing without a centrifuge. On information and belief, the FACS360 System executes stored pipetting protocols that supply the operating instructions needed for those functions, allowing users to run the advertised workflows through guided setup without writing the underlying control code. The misappropriation alleged herein concerns the operating selections and coordinated protocols implemented through that software, including those learned during the Curiox evaluation.

83. On information and belief, the accused FACS360 System was developed in a period of only a few months after Curiox disclosed its proprietary and confidential information to BD in the summer and fall of 2025. Curiox's comparable development took many years. The shorter development period, considered with the confidential access and other alleged facts, supports an inference that BD and Waters used Curiox's work to accelerate their own development.

84. On information and belief, the relevant development team at BD and then Waters lacked the specialized liquid-flow expertise necessary to independently derive and validate the protected operating selections within the Pluto workstation on the reported schedule.

85. On information and belief, access to Curiox's Pluto workstation supplied the BD and Waters' team with an implementation that otherwise would have required substantial additional development and testing. Indeed, Dr. Rezvan, one of the BD personnel who participated in the extensive on-site Curiox training and evaluation identified above, has been described by Waters as one of the primary scientists responsible for developing the FACS360 system over the past six months. The continuity between access to Curiox's operating implementation and optimization of the competing wash system further supports the inference that Curiox's disclosed know-how supplied a development shortcut to BD and Waters.

86. Dr. Rezvan is scheduled to be the sole speaker at an upcoming nationwide public webinar hosted by Waters regarding the FACS360 System on November 13, 2026, where he is presenting "A New Approach to Flow Cytometry Sample Preparation." Nowhere in Waters' promotional materials for the webinar does Waters disclose that this "new" centrifuge-free approach to sample preparation was invented and pioneered by Curiox and disclosed to BD under a strict non-disclosure agreement.

87. On information and belief, Waters intends to begin selling the system in the United States as soon as December 2026.

### H. The Defendants Used The Protected Operating Information Without Authorization.

88. On information and belief, BD used the confidential prototype and other proprietary and confidential information provided by Curiox to obtain, reproduce, and/or derive the asserted non-public implementation details and applied them to development outside the permitted evaluation purpose. Curiox bases this allegation on the functioning prototype access, BD's preceding skepticism, the additional unsupervised evaluation period, and the reported development timeline, together with distinctive operational similarities. The details of BD's internal handling and development are primarily within BD's possession.

89. The FACS360 System's advertised centrifuge-free washing and automated pipetting architecture are consistent with the need to coordinate liquid removal and replacement while retaining the cells being prepared. In the pipette-based process demonstrated by Curiox, that coordination depends on the depth at which a tip enters and aspirates from the solution, the rate at which replacement liquid or reagents are dispensed, and the speed of tip insertion and withdrawal. Those are the operating variables addressed by Trade Secrets 1, 2, and 3. On information and belief, BD and Waters used Curiox's disclosed selections for those variables, and their coordinated application, to develop or optimize the corresponding FACS360 wash and reagent-handling routines. Curiox's Pluto workstation and demonstrated software supplied BD with an operational reference for achieving those results. Together with the access, personnel, and timing alleged above, the corresponding software-

controlled functions support an inference of misuse of Curiox's protected information in developing the FACS360.

90. On information and belief, Waters received the asserted protected information through BD personnel after the acquisition—including but not limited to Dr. Rezvan, Dr. Sen and Mr. Le—and used it to continue to develop the FACS360 System. Waters knew or had reason to know the information came from Curiox's restricted evaluation.

91. On information and belief, Waters directed or participated in the acquisition or use of Curiox's protected information in the FACS360 System after learning of its confidential origin.

92. The asserted misuse does not require literal copying of Curiox's source code. Nonpublic operating settings, methods, or protocol combinations can be used to inform another implementation, avoid failed approaches, or reduce the experimentation needed to reach a working result. On information and belief, BD and Waters used the identified operating information in those ways to develop or refine the accused FACS360 System. The FACS360's combined washing, cocktailing, and staining functions also correspond to the operations addressed by Trade Secrets 4 and 5. Washing removes unwanted reagents while preserving the cells. Antibody cocktailing combines reagents, and staining brings those reagents into contact with cells. Curiox's washing and cell-and-reagent mixing modes implement the wash and mixing operations through selected combinations of tip height, dispensing rate, and tip-motion speed. On information and belief, BD and Waters used the combinations underlying Curiox's Light, Moderate, and Heavy washing and mixing modes to develop or optimize the corresponding FACS360 System routines. Guided protocol setup can make those routines available to an operator without exposing their underlying operating parameters. Curiox alleges that BD and Waters used its non-public parameter combinations and optimization work in those routines; their incorporation into newly written control software would still permit the accused system to benefit from the implementation that Curiox disclosed.

93. Curiox did not consent to the alleged competitive use or dissemination of the at least five asserted trade secrets. To the extent disclosure to a representative or qualifying successor was permitted, it remained subject to restrictions on purpose, confidentiality, and use. On information and

belief, BD and Waters' development and planned commercialization of the FACS360 System exceeded those restrictions.

94. On information and belief, the alleged conduct was willful and malicious because BD and Waters each used information it knew was entrusted for a limited evaluation and subject to express prohibitions, in order to obtain a competing commercial implementation without Curiox's permission. The knowledge and deliberate participation of each Defendant are alleged above.

95. The alleged misuse has impaired Curiox's control over valuable operating know-how and its ability to negotiate for the technology's commercial use. Further use or disclosure threatens Curiox's competitive position, sales opportunities, and customer relationships. Recoverable loss, unjust enrichment, and the portion attributable to particular secrets will be established through proof.

### I. Waters Disrupted Curiox's Prospective Business With BD.

96. Curiox and BD had an identifiable commercial relationship concerning sample-preparation systems, evidenced by the CDA and BD's request for the prototype evaluation. The business relationship with BD regarding Curiox's Pluto products would have produced an economic benefit to Curiox including increased sales.

97. On information and belief, Waters knew of that relationship and the specific opportunity due to its acquisition of BD Biosciences. Its knowledge extended to Curiox's negotiations and probable commercial benefit from the identified relationship with BD.

98. On information and belief, Waters intentionally acted to divert the opportunity away from a partner-based Curiox solution and toward exploitation of its own FACS360 System, with the purpose or substantial certainty of disrupting the identified Curiox-BD relationship. The independently wrongful conduct included the knowing trade-secret misuse alleged above.

## COUNT I
## Misappropriation under the Defend Trade Secrets Act ("DTSA")

18 U.S.C. §§ 1836 and 1839
Against all Defendants

99. Curiox incorporates the allegations in paragraphs 1 through 98.

100. Curiox is the owner of the at least five trade secrets identified in Paragraphs 47 through 51, within the meaning of 18 U.S.C. § 1839(4). Each constitutes scientific, technical, or engineering

information, including methods, processes, procedures, or program-controlled operating information, within 18 U.S.C. § 1839(3).

101. Curiox took reasonable measures to keep the information secret, and the information derives independent economic value from not being generally known to, or readily ascertainable through proper means by, others who could obtain economic value from its disclosure or use. The information relates to products and services used or intended for use in interstate and foreign commerce.

102. BD acquired the information in circumstances imposing duties to maintain secrecy and limit use. On information and belief, it used or disclosed the information without Curiox's consent for competitive development beyond the permitted Purpose. That unauthorized use or disclosure constitutes misappropriation under 18 U.S.C. § 1839(5)(B), even to the extent the initial receipt for evaluation was authorized.

103. On information and belief, Waters acquired, used, or disclosed the identified information while knowing or having reason to know that it originated with Curiox and was obtained through a person subject to duties to Curiox, as alleged separately above. On information and belief, Waters thus knew or had reason to know before the use or disclosure that the information was Curiox's trade secret and knew or had reason to know that BD had acquired it through improper means or was breaching a duty of confidentiality by disclosing it. Such use or disclosure violates 18 U.S.C. § 1839(5)(B)(ii). To the extent a Defendant obtained information through a breach or inducement of a secrecy duty and knew or had reason to know that fact, its acquisition also violates § 1839(5)(A).

104. The Defendants' actual and threatened misappropriation has injured and threatens further injury to Curiox. Curiox seeks actual loss and unjust enrichment caused by the misappropriation that is not otherwise included in actual loss, or, in the statutory alternative, a reasonable royalty under 18 U.S.C. § 1836(b)(3)(B). Any avoided-development-cost recovery will be limited to a proven benefit caused by use of the asserted secrets.

105. Curiox seeks preliminary and permanent injunctive relief under 18 U.S.C. § 1836(b)(3)(A) against actual or threatened misuse and appropriate affirmative measures protecting the secrets. As to each Defendant proven to have acted willfully and maliciously, Curiox seeks

exemplary damages up to the statutory limit and reasonable attorneys' fees under § 1836(b)(3)(C)-(D). Curiox requests the protections of 18 U.S.C. § 1835 for confidential trade-secret information presented in this action.

**COUNT II**
**Misappropriation under the California Uniform Trade Secrets Act**

California Civil Code §§ 3426 through 3426.11
Against all Defendants

106. Curiox incorporates the allegations in paragraphs 1 through 105. This claim concerns the challenged acquisition, use, or disclosure occurring in California as alleged above.

107. The operating information identified in Paragraphs 47 through 51 constitutes trade secrets under California Civil Code § 3426.1(d). It has independent economic value because it is not generally known to persons who could obtain economic value from its disclosure or use, and Curiox used reasonable efforts under the circumstances to maintain its secrecy.

108. For the reasons alleged separately as to BD and Waters, each used or disclosed Curiox's trade secrets without consent while knowing or having reason to know of the applicable confidentiality and use restrictions or that the information was derived through a person who owed those duties. Defendants also acquired the information through improper means, including breach or inducement of a breach of a secrecy duty. On information and belief, Defendants thus knew or had reason to know before the use or disclosure that the information was Curiox's trade secret and knew or had reason to know that BD had acquired it through improper means or was breaching a duty of confidentiality by disclosing it. This conduct constitutes misappropriation under California Civil Code § 3426.1(b).

109. Curiox has suffered and will suffer injury caused by the misappropriation and seeks actual loss and nonduplicative unjust enrichment under California Civil Code § 3426.3(a). If neither those damages nor unjust enrichment is provable, Curiox seeks a reasonable royalty as authorized by § 3426.3(b).

110. Curiox seeks relief against actual and threatened misappropriation under California Civil Code § 3426.2, including a period sufficient to eliminate a proven commercial advantage resulting from misuse. Against any Defendant proven to have acted willfully and maliciously, Curiox

seeks exemplary damages under § 3426.3(c) and reasonable attorneys' fees and recoverable costs under § 3426.4, subject to election and the prohibition on duplicative recovery.

**COUNT III**
**Breach of the Confidential Disclosure Agreement**

Against Defendant BD

[redacted]

[redacted]

**COUNT IV**
**Intentional Interference With Prospective Economic Advantage**
Against Defendant Waters

120. Curiox incorporates the allegations in paragraphs 1 through 119.

121. Curiox had an existing economic relationship with BD concerning a specific proposed business relationship with respect to Curiox's Pluto products. The relationship would have produced an economic benefit to Curiox in at least the form of increased sales for the reasons alleged in Paragraph 96-98.

122. Waters knew of that existing relationship and its probable benefit to Curiox through the communications and circumstances alleged above. BD remained a separate company, and Waters was not a party to the identified prospective arrangement between Curiox and BD.

123. Waters intentionally engaged in the disruptive acts identified in Paragraphs 96-98, either intending disruption or knowing that disruption was certain or substantially certain to occur. The challenged conduct was independently wrongful under the DTSA and applicable trade-secret law because it knowingly used or procured the unauthorized use of Curiox's protected information.

124. The relationship was actually disrupted by BD ultimately deciding not to pursue any commercial relationship with Curiox, and Waters' conduct was a substantial factor in that disruption and the resulting economic harm. Curiox lost a potential partnership with BD as a result. Curiox

seeks compensatory damages proved with reasonable certainty, without duplicating amounts awarded under other counts.

125. To the extent the evidence establishes the required oppression, fraud, or malice, Curiox seeks punitive damages under California Civil Code § 3294. As to a corporate defendant, Curiox will establish the officer, director, or managing-agent participation, authorization, or ratification required by § 3294(b). Any such award is subject to applicable limits and election to prevent duplicative punitive recovery.

**COUNT V**
**Unfair Competition and Unfair Business Practices**

California Business and Professions Code §§ 17200 et seq.
Against all Defendants

126. Curiox incorporates the allegations in paragraphs 1 through 125 as though fully set forth herein.

127. Defendants are persons within the meaning of California Business and Professions Code § 17201. The challenged acts constitute business acts or practices under § 17200 and arise from Defendants' California-based evaluation, acquisition, use, development, and commercialization activities alleged above, including activities at the Milpitas and San Jose facilities.

128. Defendants' unlawful and unfair business practices include obtaining access to Curiox's confidential C-FREE Pluto technology for the limited evaluation described in the CDA; using or disclosing that technology outside the permitted Purpose; copying, reverse engineering, or creating derivative implementations in breach of the agreed restrictions; and knowingly acquiring or exploiting the resulting technology to develop, promote, and commercialize the FACS360 System. BD's breaches of the CDA formed part of this course of commercial conduct, as did Waters' knowing acquisition and exploitation of the protected technology.

129. On information and belief, Waters is approaching Curiox's existing customers and prospective customers and attempting to persuade them to purchase the FACS360 System instead of Curiox's Pluto technology. Waters is thereby using the FACS360 System developed through the misconduct alleged above to divert demand for Curiox's products and software to their competing platform.

130. The practices are unlawful within the meaning of § 17200 because they include the unauthorized acquisition, use, and disclosure of trade secrets in violation of the DTSA, 18 U.S.C. §§ 1836 and 1839, and violations of California trade secret law and intentional interference alleged above. Curiox relies on BD's breaches of the CDA as part of the unlawful and unfair business scheme and the restrictions Defendants knowingly exceeded, rather than treating an ordinary breach of contract, standing alone, as a statutory violation.

131. The practices are also unfair because they significantly threaten competition on the merits in centrifuge-free cell-preparation technology. On information and belief, Defendants are appropriating the results of an innovator's years of development to enter the market without independently developing the protected implementation, and are deploying that advantage to displace the innovator from its own customer relationships. This course of conduct undermines incentives for independent technical development and permits Defendants to divert demand through wrongful appropriation of the technology on which Curiox competes. BD's deliberate breach of the evaluation restrictions and Waters' knowing commercial exploitation are integral parts of that competitive misconduct.

132. As a direct and proximate result of these practices, Curiox has suffered injury in fact and lost money or property within the meaning of § 17204, including diminution in the economic value of its proprietary technology and impairment of its ability to commercially exploit that technology through sales, licensing, and the business relationship with BD described above. Waters' ongoing solicitation of Curiox's customers and prospective customers using the FACS360 system threatens to extend those economic injuries and to divert further business from Curiox.

133. The practices are ongoing and threaten repetition through the announced demonstration, marketing, and planned sale of the FACS360 System. Without relief, Defendants will continue using the wrongfully obtained commercial advantage to compete for Curiox's existing and prospective customers, further impairing the value of Curiox's technology, goodwill, and market opportunities.

134. Curiox lacks an adequate remedy at law to prevent these continuing and threatened injuries. An award for past loss would not prevent further exploitation of the protected technology or

restore customer relationships and competitive opportunities impaired by continued unlawful solicitation and commercialization. Under § 17203, Curiox seeks preliminary and permanent injunctive relief against the challenged unlawful and unfair practices, including use or disclosure of Curiox's protected technology in developing, demonstrating, marketing, selling, or licensing the FACS360 System and soliciting Curiox's customers and prospective customers.

135. Curiox further seeks restitution or restoration under § 17203 to the extent Defendants acquired money or property from Curiox in which Curiox has an ownership or vested interest, and to the extent legal remedies are inadequate. Any recovery under this count shall be limited to relief authorized by the UCL and shall not duplicate recovery under another count. Compensatory damages, exemplary damages, and non-restitutionary disgorgement are sought, if available, under the other causes of action, rather than under this count.

**PRAYER FOR RELIEF**

WHEREFORE, Curiox requests judgment as follows:

A. Compensatory damages, actual loss, and non-duplicative unjust enrichment caused by the conduct proved, in amounts determined at trial;

B. Exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and California Civil Code § 3426.3(c), within their respective limits; and punitive damages under § 3294 upon the required proof, with appropriate election against duplication;

C. Preliminary and permanent injunctions preventing further acquisition, use, or disclosure of the identified trade secrets and, under the CDA, unauthorized use or disclosure of protected Confidential Information;

D. An injunction against development, demonstrations, marketing, sale, licensing, or distribution of the FACS360 System to the extent those activities use or disclose the protected information;

E. Appropriate measures requiring identification and segregation of materials containing the protected information, identification of recipients, and return or controlled deletion after preservation of evidence and any lawful archival materials under restrictions approved by the Court;

F. Protection of trade secret information under 18 U.S.C. § 1835, California Civil Code § 3426.5, an appropriate protective order, and narrowly tailored sealing orders where warranted;

G. Reasonable attorneys' fees and recoverable costs to the extent authorized by the DTSA, CUTSA, or another applicable legal basis; pre-judgment and post-judgment interest as permitted by law;

H. Preliminary and permanent injunctive relief under California Business and Professions Code § 17203 preventing the challenged unlawful and unfair business practices, including exploitation of Curiox's protected technology to solicit Curiox's customers and prospective customers, and restitution or restoration of money or property acquired from Curiox in which Curiox has an ownership or vested interest, to the extent equitable relief is available and legal remedies are inadequate; and

I. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Curiox demands trial by jury on all issues so triable.

Dated: November 11, 2026

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: *__/s/ Christopher Kao__*
Christopher Kao

Attorneys for Plaintiffs
Curiox Biosystems Co., Ltd. and
Curiox Biosystems, Inc.